UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
                                    )
**UNITED STATES OF AMERICA**        )
                                    )
    v.            )    **Criminal Case No. 09-58-1 (RCL)**
                                    )
**WALTER MARTINEZ,**                )
    **Defendant.** )
                                    )
_____ )

## MEMORANDUM OPINION

A federal grand jury indicted defendant Walter Martinez for conspiracy to distribute and possess with intent to distribute fifty grams or more of cocaine base and five kilograms or more of cocaine, in violation of 21 U.S.C. § 846.

Before the Court are the following motions: defendant's Motion to Disclose Identities of Each Confidential Informant Regardless of Whether They Will Be Called at Trial, June 29, 2010, ECF No. 89; defendant's Motion to Dismiss the Indictment for Failure to Provide Notice and Appropriately Charge the Alleged Offense, Oct. 1, 2010, ECF No. 98; defendant's Motion to Dismiss the Indictment for Improper Venue, Oct. 1, 2010, ECF No. 99; and defendant's Motion for a Bill of Particulars, Oct. 1, 2010, ECF No. 100. Upon consideration of the government's omnibus opposition thereto, Dec. 13, 2010, ECF No. 109, defendant's omnibus reply brief, Dec. 20, 2010, ECF No. 111, applicable law, and the entire record in this case, the Court will deny the motions. The Court will discuss them in turn.

## I. THE COURT WILL DENY WITHOUT PREJUDICE DEFENDANT'S MOTION TO DISCLOSE IDENTITIES OF EACH CONFIDENTIAL INFORMANT REGARDLESS OF WHETHER THEY WILL BE CALLED AT TRIAL [89].

### A. Legal Standard

The "informer's privilege" is "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957). This privilege must give way when disclosure of an informant's identity would be "relevant and helpful to the defense of an accused," or "essential to a fair determination of a cause." *Id.* at 60–61.

There is "no fixed rule with respect to disclosure"; rather, the Court must "balance[e] the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62. *Roviaro* only requires disclosure of an informant who was "an actual participant in or a witness to the offense charged." *United States v. Warren*, 42 F.3d 647, 654 (D.C. Cir. 1994) (citations and quotations omitted). "[D]efendants face a heavy burden to establish that the identity of an informant is necessary to the defense. Speculation as to the information the informant may provide is insufficient." *Id.* (citations and quotations omitted).

Under *Brady*, a defendant only has a right to receive from the government exculpatory information, not inculpatory information. "There is no general constitutional right to discovery in a criminal case." *United States v. Celis*, 608 F.3d 818, 831 (D.C. Cir. 2010) (quoting *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)). Defendants have no right to a witness list in advance of trial. *Id.*

### B. Analysis

First, neither defendant nor the government claims that disclosure of the confidential informants' names would be exculpatory information. The government assures the Court that it will continue to comply with its disclosure obligations under *Brady*, *Giglio*, and the *Jencks* Act. Gov't Opp'n 21, ECF No. 109.

Second, the Court must "balance[e] the public interest in protecting the flow of information against [defendant's] right to prepare his defense." *Roviaro*, 353 U.S. at 59. As to the public interest, the government states that disclosure of the confidential informants' names "would expose the informants to danger in the violent drug community," so their names are "being withheld for their safety." Gov't Opp'n 20, ECF No. 109. Safety of witnesses is, of course, an important public interest. As to defendant's right and ability to prepare his defense, defendant cites to the importance of these informants in the government's case, particularly in the context of the alleged controlled buys. Def.'s Reply 7–8, ECF No. 111. In all likelihood, these informants are "actual participant[s]" in the charged crimes, *Warren*, 42 F.3d at 654, and their knowledge about the charged crimes would be "relevant and helpful" to the defense, *Roviaro*, 353 U.S. at 60–61. Thus, at some point, the government will have to disclose their identities to the defense. But not yet. Under *Roviaro*, the defense must only have the opportunity to obtain their testimony in some manner during the trial. In that case, the informant did not testify at trial, and he was not available to the defense. In deciding that the government's refusal to disclose the informant's identity violated defendant's rights, the Supreme Court relied on the fact that defendant was neither able to cross-examine the informant nor call the informant as a witness. Here, that problem does not exist, because the informants will either testify at trial as part of the government's case-in-chief, or defendant will have an opportunity to call them in his

own case as witnesses. The government assures the Court that "if any participating informant does not testify at trial, the government will make that informant available to the defendant at his request." Gov't Opp'n 20, ECF No. 109. This is sufficient under *Roviaro*. As a final matter, the government and defendant both acknowledge that defendant likely already knows the identities of most of the confidential informants.

Accordingly, because defendant does not at this stage have a right to know the identities of non-exculpatory confidential informants who may or may not testify against him at trial, the Court will deny this motion without prejudice.

## II. THE COURT WILL DENY DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR FAILURE TO PROVIDE NOTICE AND APPROPRIATELY CHARGE THE ALLEGED OFFENSE [98].

Defendant seeks to dismiss the indictment, because it fails to "allege with particularity the elements of the charged offense or provide necessary facts," and because it fails to "comply with the notice and grand jury protections afforded to him under the Constitution." Def.'s Mot. 1, ECF No. 98.

### A. Legal Standard

"The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "A valid indictment must: (1) allege the essential facts constituting the offense, (2) allege each element of the offense, so that fair notice is provided, and (3) be sufficiently distinctive that a verdict will bar a second prosecution for the same offense." *United States v. Sunia*, 643 F. Supp. 2d 51, 77 (D.D.C. 2009) (quoting *United States v. Bolden*, 325 F.3d 471, 490 (4th Cir. 2003)); *see also Russell v. United States*, 369 U.S. 749, 763–64 (1962).

### B. Analysis

The indictment charges one count of conspiracy under 21 U.S.C. § 846. Indictment, Mar. 3, 2009, ECF No. 3. Specifically, it charges that "from on or about November 1, 2005 . . . and continuing thereafter up to and including at least March 3, 2009, in the District of Columbia, the state of Maryland, the State of Texas, and elsewhere," defendant and seven co-defendants "did unlawfully, knowingly and intentionally combine, conspire, confederate and agree together and with others known and unknown to the Grand Jury, to unlawfully, knowingly and intentionally distribute and possess with intent to distribute" 50 grams or more of crack cocaine and 5 kilograms or more of powder cocaine, in violation of 21 U.S.C §§ 841(a)(1), 841(b)(1)(A)(ii), and 841(b)(1)(A)(iii). *Id.*

First, the Court finds that the indictment alleges the essential facts constituting the offense. The indictment must "apprise the defendant with reasonable certainty of the nature of the accusation against him." *Russell*, 369 U.S. at 765. The statutory language "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Hamling v. United States*, 418 U.S. 87, 117–18 (1974). "[A]n indictment under 21 U.S.C. § 846 is sufficient if it alleges a conspiracy to distribute drugs, the time during which the conspiracy was operative and the statute allegedly violated, even if it fails to allege any specific overt act in furtherance of the conspiracy." *United States v. Sweeney*, 688 F.2d 1131, 1140 (7th Cir. 1982); *United States v. Ramirez*, 54 F. Supp. 2d 25, 30 (D.D.C. 1999). "A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means." Fed. R. Crim. P. 7(c)(1). Here, the indictment sets forth the statute allegedly violated, all of the elements of that statute (as discussed blow), the

time period during which the conspiracy took place, the location of the conspiracy, the names of the co-conspirators, and the types and quantities of drugs involved in the conspiracy. This is sufficient to apprise defendant "with reasonable certainty" of the charges against him. Further, because the indictment is sufficient, and because the government has provided defendant with ample discovery in this case, Gov't Opp'n 7 n.5, ECF No. 109, the Court finds that defendant is not "prejudiced . . . in the preparation of his defense." *United States v. McBride*, 498 F.2d 683, 686 (D.C. Cir. 1974).

Second, the Court finds that the indictment charges all of the required elements. "It is accepted law that an indictment must contain the elements of the offense intended to be charged." *United States v. Pickett*, 353 F.3d 62, 66 (D.C. Cir. 2004) (citations omitted). An indictment may track the language of the statute, so long as it includes every element of the offense. *Id.* at 67. 21 U.S.C. § 846 provides: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." This narcotics conspiracy statute requires proof of the following elements: (1) "an agreement to commit any offense(s) defined in the subchapter," *United States v. Baugham*, 449 F.3d 167, 171 (D.C. Cir. 2006); *United States v. Shabani*, 513 U.S. 10 (1994), and (2) "specific intent to further the common unlawful objective of the conspiracy," *United States v. McCoy*, 215 F.3d 102, 107 (D.C. Cir. 2000). Section 846 "dispenses with the usual requirement of an overt act." *Baugham*, 449 F.3d at 171; *Shabani*, 513 U.S. 10. The Court finds that the indictment charges both required elements, because it charges: (1) that defendant agreed with co-defendants to commit 21 U.S.C §§ 841(a)(1), 841(b)(1)(A)(ii), and 841(b)(1)(A)(iii), and (2) that defendant "knowingly and

6

intentionally" agreed to violate these laws. As defendant acknowledges, the indictment does not charge an overt act in furtherance of the conspiracy, but it is not required to do so.

Third, the Court finds that the indictment is sufficiently distinctive that a verdict would bar a second prosecution for the same offense. As discussed, the indictment sets forth the essential facts of the offense—including most importantly the dates of the conspiracy and the object of the conspiracy—as well as the elements of the offense. This is enough to prevent future prosecutions for the same offense.

Accordingly, because the Court finds that the indictment is sufficient, the Court will deny this motion.

### III. THE COURT WILL DENY DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR IMPROPER VENUE [99].

Defendant argues that "the few known events involving the District of Columbia did not involve Mr. Martinez, are not alleged to further a conspiracy involving Mr. Martinez, or otherwise fail to confer venue here for the lone conspiracy charge." Def.'s Mot. 2, ECF No. 99.

#### A. Legal Standard

The Constitution addresses venue twice. First, it provides: "The trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State the Trial shall be at such Place or Places as the Congress may by Law have directed." U.S. Const. art. III, § 2. It further provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district where the crime shall have been committed . . . ." U.S. Const. amend. VI. The Federal Rules of Criminal Procedure implement these constitutional provisions, providing: "Unless a statute or these rules permit otherwise, the

government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18.

"[A]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). "Venue may be proper in more than one district." *United States v. Lam Kwong-Wah*, 924 F.2d 298, 301 (D.C. Cir. 1991). "[V]enue is proper in any district in which an overt act in furtherance of the conspiracy was committed, even where an overt act is not a required element of the conspiracy offense." *Whitfield v. United States*, 543 U.S. 209, 218 (2005). "The government bears the burden of establishing by a preponderance of the evidence that venue is proper with respect to each count charged against the defendant." *Lam Kwong-Wah*, 924 F.2d at 301. Thus, if the Court finds that the government has shown by a preponderance of the evidence that either a part of the conspiracy or any overt act in furtherance of the conspiracy took place in the District of Columbia, then venue will be proper in the District.

### B. Analysis

In support of its venue argument, the government cites to two overt acts in furtherance of the conspiracy that took place in the District of Columbia. First, as the government discusses in its opposition, in a related case before this Court, defendant pled guilty to possession with intent to distribute a mixture and substance containing a detectable amount of cocaine, in violation of 18 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Plea Agreement 1, *United States v. Martinez*, 05-cr-445-1 (D.D.C.), Aug. 10, 2006, ECF No. 63. Specifically, defendant admitted to attempting to sell three kilograms of cocaine in both Maryland and the District of Columbia on December 6, 2005. Proffer of Proof 3–5, *United States v. Martinez*, 05-cr-445-1 (D.D.C.), Aug. 10, 2006, ECF

8

No. 64. Defendant admitted that his son/co-defendant, William Aguilar-Vargas, was a part of this planned drug transaction. *Id.* at 4. When defendant was arrested in the District of Columbia, officers found one kilogram of powder cocaine in the car that defendant was driving, and two kilograms of cocaine in the car that co-defendant Mr. Aguilar-Vargas was driving. *Id.* at 4–5. Notably, Mr. Aguilar-Vargas is a co-defendant in the conspiracy case now before the Court.

Second, the government proffers that on October 3, 2008, a confidential informant made a controlled purchase of narcotics from defendant and/or one of his conspirators in Washington, DC. Gov't Opp'n 6, ECF No. 109. On this occasion, the confidential informant purchased five ounces of powder cocaine for $5,000. *Id.*

The Court finds that the government has shown, by a preponderance of the evidence, that the first overt act took place in the District. The Court need not reach the second overt act. First, as a threshold matter, the Court finds that this first act was an overt act in furtherance of the charged conspiracy. The indictment charges that the conspiracy took place between November 1, 2005, and March 3, 2009. Indictment 1, ECF No. 3. December 6, 2005, falls during the time of the charged conspiracy. In the course of this overt act, defendant worked with his co-conspirator Mr. Aguilar-Vargas to possess with intent to distribute powder cocaine, and the goal of the conspiracy was to distribute and possess with intent to distribute powder and crack cocaine. This act, thus, was clearly in furtherance of the conspiracy. Second, the Court disagrees with defendant's assertion that "[t]he facts surrounding that act smack of manufactured venue." Def.'s Reply 5, ECF No. 111. The D.C. Circuit has not resolved what a claim of "manufactured venue" entails. *See United States v. Spriggs*, 102 F.3d 1245, 1250–51 (D.C. Cir. 1996). The court suggests that it could mean "venue entrapment," but then notes that "[i]t is a little hard to conceive of a person predisposed to commit a federal crime—but not in some specific district."

*Id.* at 1250. The court then suggests that it could mean "a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the Government from invoking judicial processes to obtain a conviction," which would likely entail trial in a distant district. *Id.* at 1251 (citations and quotations omitted). But then the court states: "obviously there is nothing distant about the District vis-à-vis its Maryland and Virginia suburbs." *Id.* Although the D.C. Circuit did not settle the law on what constitutes a "manufactured venue" claim, it affirmed the district court ruling that venue in the District is appropriate even when "agents 'purposefully' arranged for defendants to pick-up cash in the District rather than at the suburban dealerships from which the cars were bought." *Id.* at 1250 (quoting language from defendant's argument). This fact pattern is nearly identical to the one now before the Court. Because the facts in *Spriggs* were sufficient to establish venue in the District, the Court finds that the facts in this case are sufficient to establish venue in the District. The Court notes—as did the D.C. Circuit—the very close geographical proximity of the District and Maryland—defendant's preferred venue.

Accordingly, because the Court finds that venue is proper in the District, the Court will deny this motion.

IV. **THE COURT WILL DENY DEFENDANT'S MOTION FOR A BILL OF PARTICULARS [100].**

A. **Legal Standard**

"The court may direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f). "A bill of particulars can be used to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." *United States v. Mejia*, 448 F.3d 436, 445 (D.C. Cir. 2006) (quoting *United States v. Butler*, 822 F.2d 1191, 1193

(D.C. Cir. 1987)). "[I]f the indictment is sufficiently specific, or if the requested information is available in some other form, then a bill of particulars is not required." *Butler*, 822 F.2d at 1193. "A bill of particulars is not a discovery tool or a devise for allowing the government to preview the government's theories or evidence. It properly includes clarification of the indictment, not the government's proof of its case." *Ramirez*, 54 F. Supp. 2d at 29.

**B. Analysis**

First, defendant argues that he is entitled to a bill of particulars disclosing the identities of his alleged co-conspirators. Def.'s Mot. 3–4, ECF No. 100. The Court discussed in detail above why defendant is not entitled to disclosure of the identities of confidential informants. In all likelihood, there is significant overlap between the identities of the confidential informants and the unknown co-conspirators. Accordingly, identical logic applies to why defendant is not entitled to know the identities of his co-conspirators at this time.

Second, defendant argues that he is entitled to a bill of particulars disclosing which co-conspirator engaged in which conspiratorial act alleged in Count One of the indictment. Def.'s Mot. 5–7. As the Court held above, the charges brought against defendant are "stated with enough precision to allow the defendant to understand the charges." *Mejia*, 448 F.3d at 445. The indictment alleges the essential facts, charges the required elements, and bars a second prosecution for the same offense. It need not spell out which co-conspirator committed which conspiratorial act, and, as detailed above, need not allege any overt act in furtherance of the conspiracy. Furthermore, the Court finds that defendant has sufficient information to prepare his defense. The government has provided ample discovery to defendant. Of the 11,508 telephone activations between co-conspirators that agents intercepted and recorded in this case, "[t]he government has identified 146 calls that may be used at trial and provided a list of those calls to

the defendant," along with draft transcriptions and translations of those calls. Gov't Opp'n 7, ECF No. 109. The government also summarized the factual background of this case at length in its opposition, which could indicate the facts that the government deems relevant to its prosecution. *Id.* at 2–14. Although the purpose of a bill of particulars is not to provide discovery to defendant, the fact that the government has provided this information to defendant shows that "the requested information is available in another form." *Butler*, 822 F.2d at 1193.

Accordingly, because the Court finds that a bill of particulars is not necessary for defendant to understand the charges and prepare a defense, the Court will deny this motion.

## V. CONCLUSION

For the reasons stated, the Court will deny without prejudice defendant's Motion to Disclose Identities of Each Confidential Informant Regardless of Whether They Will Be Called at Trial [89], deny defendant's Motion to Dismiss the Indictment for Failure to Provide Notice and Appropriately Charge the Alleged Offense [98], deny defendant's Motion to Dismiss the Indictment for Improper Venue [99], and deny defendant's Motion for a Bill of Particulars [100].

A separate order consistent with this memorandum opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on February 15, 2011.